IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Matthew Heath,<br><br>           Plaintiff,<br><br>vs.<br><br>College of Charleston, Glenn F. McConnell, President of the College of Charleston, and Matt Roberts, Director of Athletics, both in their official and individual capacities,<br><br>           Defendants. | Civil Action No. 2:17-cv-1792-PMD<br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

## INTRODUCTION

1. This action for injunctive relief, declaratory relief, and damages is brought pursuant to 42 U.S.C. § 1983 ("Section 1983").

## JURISDICTION AND VENUE

2. This action arises under the Constitution of the United States and laws of the United States, specifically 42 U.S.C. § 1983, and accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

4. Venue is proper under 28 U.S.C. § 1391, because a substantial part of the events of omissions giving rise to the claims occurred in the District of South Carolina Charleston Division.

1

## PARTIES

5. Plaintiff Matthew Heath is a citizen and resident of Berkeley County, South Carolina.

6. Defendant College of Charleston is a public university, established and existing under color of State law by the State of South Carolina. Its offices and principal place of business are located at 66 George Street, Charleston, South Carolina, 29424.

7. Defendant Glenn F. McConnell, is being sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity as President of College of Charleston.

8. Defendant Matthew Roberts is being sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity as the Director of Athletics at the College of Charleston. Defendant Roberts, as Athletic Director, was responsible for the management and supervision of Plaintiff Heath.

## FACTS

9. Plaintiff Heath was hired by the Defendants College of Charleston and Roberts in 2015 to fill the position of Head Coach of the College's Intercollegiate Men's Baseball Team ("the team"), after serving as an assistant "pitching coach" on the men's baseball team.

10. The contract that Plaintiff entered into with the College of Charleston was set for a base term of five years, to be effective as of July 1, 2015 and to expire at the later of either: 1) June 22, 2020; or 2) the last game played by the Team during the 2019-2020 season.

11. Plaintiff's contract with the College of Charleston provided for a base salary $150,000 per season during the term of the agreement.

12. Throughout his two-year tenure with the College as head baseball coach, Plaintiff Heath performed his duties in an exemplary manner, both in ensuring the athletic performance

of the Team to the best of his ability and taking a vested interest in the lives and character of the athletes on his team. As a collegiate coach, Plaintiff strove to instill personal accountability and discipline in his players that would extend beyond their tenure on the Team and into their future endeavors with family, employment, and other relationships.

13. The Contract entered into by Plaintiff and the College of Charleston provides that Plaintiff may be terminated by the College prior to the expiration of the base term of the contract for Plaintiff's incapacity or death or "Just Cause." The Contract further provides that should the College terminate Plaintiff "Without Cause," Plaintiff would be entitled to an amount of liquidated damages totaling the amount of base salary remaining on the Contract. By virtue of his term contract terminable only for cause, Plaintiff has a recognized property interest in his continued employment that may not be denied to the Plaintiff without due process of law.

14. The employment agreement entered into by the parties states that "Just Cause" shall be determined by the President of the College, with the advice of the Director of Athletics. "Just Cause" is defined in the contract as *inter alia*: 1). a significant or deliberate violation of the Contract or of his job responsibilities or refusal/unwillingness to perform these duties in a good faith and diligent, professional manner; 2). committing or knowingly permitting by someone under his supervision and direction a significant or repetitive or deliberate violation of any law, rule, regulation, constitutional provision, policy, bylaw or directive of the College, the Colonial Athletic Conference, or a Level I or II violation of the NCAA bylaws; 3) adverse physical contact initiated by Plaintiff with a students, employee or guest; or 4) any other cause adequate to sustain the termination of a College staff employee under the College's policies.

15. By June of 2017, Plaintiff became aware that the College's Athletic Department had authorized an attorney from an outside law firm, David Dubberly, to conduct an investigation into Plaintiff's conduct as a head coach. Defendant Roberts suspended Plaintiff's employment without pay as permitted under the employment contract pending the outcome of the investigation and Roberts's recommendation.

16. On June 14, 2017, Plaintiff received a document entitled "Notice of Initiation of Recommendation for Termination Action for Just Cause," authored by Defendant Roberts. This document notified the Plaintiff that Defendant Roberts had initiated a recommendation to the President of the College to terminate Plaintiff's employment contract for "Just Cause." The document apprised Plaintiff, in vague and conclusory fashion, without dates or names of witnesses, that the Athletic Department's investigation into his conduct had revealed several instances of misconduct which allegedly constituted violations of the contract and justified Plaintiff's termination for cause:

    a. The Notice alleged that prior to his entry into the Contract and while he was a pitching coach, Plaintiff convened some of the pitchers in the third base dugout. The Notice alleged that Coach Heath pulled a pitcher who struggled during the game "up by his neck from the bench where he was sitting, and yelled at him that he had been F---ed by opposing hitters." The Notice alleged that as Plaintiff was yelling this, Plaintiff repeatedly thrust the mid-section of his body against the pitcher and said that is what the hitters were doing to the pitcher.

    b. Sometime after a baseball game against Elon University, Plaintiff "screamed at the pitchers" on a charter bus and kicked a cooler;

c. The Notice further alleged that Plaintiff required players to run excessively, practice on Mondays (the Team's required day off or "off-day"), perform drills such as "wheelbarrowing," and "bear crawls," and that Plaintiff frequently used inappropriate and abusive language laced with profanity towards his players;

d. The Notice alleged that Plaintiff talked about and made fun of players' health issues in front of other players;

e. Finally, the Notice alleged that some unidentifiable witnesses had reported that Plaintiff's coaching style created a "toxic program" that players did not want to be a part of.

f. These interviews relied upon by the Defendants were not witness statements, were not signed by the individuals interviewed, were not taken under oath, and did not identify the alleged witnesses.

g. Upon learning of the allegations leveled against him and the investigation that was being conducted, the Plaintiff received and continues to receive statements from numerous current and former players and coaches that the allegations of misconduct are completely untrue and that many of those interviewed by the third party investigator felt pressured to convey Plaintiff in a negative light and that the investigator was completely unreceptive when a player/coach attempted to defend Plaintiff.

h. Upon information and belief, the investigation by instituted by Defendant Roberts was designed for one purpose only: to end the tenure of Plaintiff as head coach in bad faith, no matter the cost–not to uncover the veracity of the allegations of misconduct.

17. This document, ostensibly entitled a "Notice," failed to identify any of the alleged witnesses, did not provide the dates, times, or locations for any of the alleged violations of Plaintiff's contract.

18. The Plaintiff avers that these allegations of misconduct contained in the "Notice" are utterly without merit, false, and defamatory. Plaintiff has been denied an opportunity to respond to these allegations and the opportunity to have these issues be heard before an impartial decision maker.

19. The "Notice" informed Plaintiff of the termination procedures that were available to him to seek a review of the investigation's findings and to respond after his receipt of this document, pursuant to his employment contract. These termination procedures were minimal, constitutionally deficient, and consisted only of the following:

    a. Plaintiff was required to submit his response to this "Notice" that identifies persons/documents that may be probative to the investigation's findings within five calendar days, or be deemed to have been terminated for cause.

    b. Plaintiff sent his response to the "Notice" on June 19, 2017 to Defendant Roberts. In this response, Plaintiff denied that he had violated the relevant provisions of his contract, that he had ever verbally or physically assaulted any player on the team, took issue with the conclusory and contradictory statements of unidentified witnesses and denied that he had violated any of College's bylaws, policies, codes or conduct, or NCAA rules. Plaintiff's response also denied each of the investigation's factual findings and provided Defendant Roberts with numerous witnesses to corroborate his denial of each incident. Upon information and belief, the majority of these witnesses Plaintiff provided in this response were never

6

contacted to corroborate or deny the occurrence of these incidents, including two members of the coaching staff under Plaintiff's supervision and the Baseball Athletic Trainer.

c. According to the language of the employment contract, after Plaintiff submitted such a response, the Director of Athletics would have ten days to consider the response and to submit a recommended final decision to the President of the College. After the submission of such a recommended final decision, Plaintiff was afforded three days to submit a written objection to both the President and the Director of Athletics, Roberts. After the submission of such an objection by the Plaintiff, under the terms of the contract, the President was afforded the power to render a decision on Plaintiff's termination, which would constitute the final action of the College of Charleston on the matter.

d. Upon information and belief, the constitutionally deficient procedures outlined above for terminating the Plaintiff under the contract were created by the Defendants with the specific intent to deprive Plaintiff of his procedural due process rights.

e. On June 23, Defendant Roberts submitted to President McConnell his final recommendation, that the Plaintiff be terminated for "Just Cause," again relying upon the findings of the earlier investigation.

f. On June 28, Plaintiff submitted to Defendants McConnell and Roberts his written objections to Roberts's Final Recommendation for Termination. In this objection, Plaintiff again pointed out the biased nature of the investigation, asked that he be

    afforded the opportunity to present his evidence and witnesses at a hearing, or at the very least a face-to-face meeting with the President.

  g. No other opportunity was afforded to Plaintiff to refute the investigation's findings or allegations made about his conduct. The only "procedure" that Plaintiff is afforded before his contract can be terminated Plaintiff is the ability to object and response twice in writing. At no time was Plaintiff afforded the opportunity to go before an unbiased decision maker and be heard on the relevant issues before his contract would be terminated. His requests for even an informal type of pre-termination hearing have all been ignored.

  h. Plaintiff was denied the opportunity to confront or cross-examine the alleged "witnesses" to the incidents described in the Athletic Department's investigation.

  i. Plaintiff was not afforded the opportunity to participate in any kind of hearing, whether informal or otherwise before his termination.

  j. Plaintiff's contract, as Defendant Roberts's representations in his initial recommendation make clear, does not provide for any type of post-termination hearing. The President of the College retains the final say in the matter of Plaintiff's termination and the President's decision on the matter constitutes the final action of the College on the matter. Plaintiff's contract of employment explicitly provides that these termination procedures supersede the termination processes otherwise available to College of Charleston employees.

20. On June 30, 2017, the Defendant McConnell submitted his written Final Decision to terminate Plaintiff's contract for "Just Cause." This decision constituted the final, unchallengeable action of the College of Charleston on this matter. No procedure of any

kind was available to Plaintiff to be heard on the issue of his termination after Defendant McConnell's final decision to terminate Plaintiff.

21. The College of Charleston termination proceedings fail to provide even minimal due process to Plaintiff inasmuch as he was deprived of his right to either a full and fair pre-termination hearing before an impartial decision maker, and no post-termination hearing, or a summary pre-termination hearing followed by a full and fair post-termination hearing before an impartial decision maker and no constitutionally adequate safeguards are afforded to him by his employment agreement, the policies and procedures of the College of Charleston, state grievance procedures, or by the actions of Defendants.

22. The employment contract entered into by the Plaintiff and Defendant College of Charleston did not contain any waiver of his constitutional rights to due process, nor did Plaintiff agree to the waiver of such rights.

23. Plaintiff has a liberty interest in his reputation, esteem in the community, and in his future employment in collegiate athletics.

24. Plaintiff has a property interest in his continued employment with the College of Charleston based on his contract, policies, practices, and understandings of continued employment.

25. Where the College of Charleston's termination procedure served to terminate Plaintiff's contract, those procedures were required to meet the standards of procedural due process, however, as promulgated and practiced, these procedures failed to do so.

26. By submitting an uncorroborated and false report of misconduct, Defendants have placed a stigma on Plaintiff's reputation.

27. Defendants' false reports of misconduct regarding Plaintiff have been published to the public at large, including news media outlets, and potential employers, causing great harm to Plaintiff's reputation and esteem within the community.

28. Plaintiff's right to due process, including a full and fair hearing before an impartial decision maker, is a clearly established right pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Any reasonable official in the individual Defendants' positions would have understood that depriving Plaintiff to such a hearing violates this right.

29. Plaintiff's right to substantive due process is a clearly established right. Any reasonable official in the Defendants' positions would have understood that placing such a stigma on Plaintiff's reputation and esteem in the community by publishing and disseminating false allegations of misconduct violates this clearly established right.

30. At all times referenced herein, the individual Defendants have acted individually and under color of state law.

31. At all times referenced herein, as evidenced by their conduct, the individual Defendants have acted maliciously, recklessly, in bad faith, and in callous disregard of Plaintiff's constitutional rights.

32. The Defendants, at all times relevant, acted under color of State law, regulation or custom or usage of the State of South Carolina, have subjected and threaten to subject Plaintiff to the deprivation of rights and privileges secured him by the United States Constitution.

33. As a result of Defendants' acts and omissions, Plaintiff has been proximately caused emotional distress, embarrassment, humiliation, loss of esteem in the community, and damage to his reputation.

34. As a result of Defendants' acts and omissions, Plaintiff has been proximately caused a loss of past and future income and losses associated with the loss of employment and income.

### FOR A FIRST CAUSE OF ACTION
Procedural Due Process
42 U.S.C. § 1983

35. The Plaintiff incorporates all preceding and subsequent paragraphs of this Complaint.

36. By the acts and practices alleged above, the Defendants have deprived Plaintiff of his procedural due process rights as guaranteed to him by the Fourteenth Amendment of the Constitution of the United States.

37. The Defendants failed to provide Plaintiff with any constitutionally adequate hearing before an impartial decision maker, notice, or an opportunity to be heard, thereby interfering with Plaintiff's property right of continued employment, all under color of state law in violation of 42 U.S.C. § 1983.

38. Plaintiff is therefore entitled to compensatory damages for the loss of pay and benefits he has lost and will continue to lose, emotional distress, and punitive damages as a result of the Defendants' willful and wanton actions pursuant to 42 U.S.C. § 1983 in an amount to be determined by a jury. The Plaintiff is additionally entitled to recovery, and, hereby does request recovery of all reasonable attorneys' fees, costs, and expenses incurred in the bringing of this action pursuant to 42 U.S.C. § 1988.

### FOR A SECOND CAUSE OF ACTION
Substantive Due Process
42 U.S.C. § 1983

39. The Plaintiff incorporates all preceding and subsequent paragraphs of this Complaint.

40. The Defendants, by the acts and omissions described above, have placed a stigma on Plaintiff's good reputation within the community. The Defendants have caused the false and defamatory allegations contained in the investigation report to become disseminated to the public.

41. As a result of the Defendants actions and inactions, therefore, the Plaintiff has lost not just the opportunity to meaningfully defend himself against these allegations at a constitutionally sufficient hearing, Plaintiff's ability to apply for employment as an athletic coach with other prospective employers has been severely hindered, if not eliminated entirely.

42. Plaintiff has requested such a "name clearing" hearing, but this request has been ignored and otherwise denied.

43. Accordingly, the Defendants have violated the Plaintiff's due process rights in so far as the liberty interest the Plaintiff enjoys in his good name and reputation have been violated by the Defendants publication of false and stigmatizing charges against him, and their corresponding refusal to grant him a name clearing hearing before or after his termination.

44. The Plaintiff is therefore entitled to compensatory and punitive damages for the emotional distress caused by Defendant's willful and wanton actions, for compensatory damages associated with the termination of his contract of employment without just cause, for reputational damages and loss of esteem in the community pursuant to 42 U.S.C. § 1983 and reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

## FOR A THIRD CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

45. The Plaintiff incorporates all preceding and subsequent paragraphs of this Complaint.

46. As a result of the Defendants' actions as described above, the Plaintiff is entitled to declaratory and injunctive relief from this Court to include: a) the Court's declaratory judgment that the Defendants have violated Plaintiff's due process rights in the termination of his contract of employment; b). a preliminary injunction requiring that Plaintiff be provided with a constitutionally sufficient post-termination hearing, to include a hearing before an impartial decision maker not associated with the Defendants or College of Charleston, the right to be represented by counsel, to call witnesses, present evidence, to cross-examine witnesses, and the full panoply of rights protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

   a. exercise jurisdiction over the parties and subject matter of this action;
   b. enter is declaratory judgment that the Defendants have violated Plaintiff's due process rights as set out above;
   c. award Plaintiff compensatory and punitive damages;
   d. enter temporary, preliminary, and permanent injunctions which enjoin the Defendants from their continued violation of Plaintiff's constitutional rights, and from failing to provide Plaintiff with a constitutionally sufficient hearing;
   e. award Plaintiff all reasonable attorneys' fees, costs, and expenses incurred in the bringing and prosecution of this action;
   f. grant such other and further relief as is deemed just and proper.

**GIBBS & HOLMES**

/s/ Allan R. Holmes
Allan R. Holmes (Fed. ID 1925)
E-mail: aholmes@gibbs-holmes.com
Cheryl H. Ledbetter (Fed. ID 11446)
Timothy O. Lewis (Fed. ID 9864)
171 Church Street, Suite 110
Telephone: 843-722-0033
Fax:  843-722-0114
**ATTORNEYS FOR PLAINTIFF**

July 7, 2017
Charleston, South Carolina

14