# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Matthew Heath, | ) |
|         Plaintiff, | )    C.A. No.: 2:17-cv-1792-PMD-JDA |
| v. | )    **ORDER** |
| College of Charleston, Glenn F. McConnell, President of the College of Charleston and Matt Roberts, Director of Athletics, in their Official and individual capacities, | ) |
|         Defendants. | ) |

This matter is before the Court on Plaintiff Matthew Heath's objections to United States Magistrate Judge Jacquelyn D. Austin's report and recommendation ("R & R") (ECF Nos. 27 & 26). The Magistrate Judge recommends denying Plaintiff's motion for a preliminary injunction (ECF No. 5). For the reasons stated herein, the Court agrees with the Magistrate Judge's recommendation and denies Plaintiff's motion.

## BACKGROUND AND PROCEDURAL HISTORY

Since the parties have no objections, the Court, finding no clear error, adopts the background set out in the R & R. The Court briefly summarizes and supplements that factual and procedural background as relevant.

Plaintiff entered into a contract with Defendant College of Charleston on July 1, 2015, to be the head coach of the men's baseball team for five years. Plaintiff's contract provided that he could be terminated for "Just Cause," such as violating school or athletic conference rules, failing to perform job responsibilities, or violating the terms of the contract. The contract provided that if the athletic director initiated a termination for Just Cause, the director would notify Plaintiff,

provide him an opportunity to respond, and submit a final recommendation to the College president.  Plaintiff would have an opportunity to contest the recommendation, and the President would then make a final decision.

In summer of 2017, the College investigated Plaintiff's performance and conduct.  On June 14, 2017, the College's Athletic Director, Matt Roberts, notified Plaintiff of the initiation of Just Cause termination procedures.  On June 16, Plaintiff objected that he had not been afforded a hearing to respond to the allegations of misconduct.  On June 19, Plaintiff submitted a response to the notice.  On June 23, Roberts submitted his final recommendation to Defendant College President Glenn McConnell.  On June 28, Plaintiff objected to the recommendation and reiterated his request for a hearing.  On June 30, President McConnell rendered a final decision to terminate Plaintiff.

This suit was initiated on July 7, when Plaintiff filed a complaint asserting a deprivation of his constitutional due process rights in violation of 42 U.S.C. § 1983.  On July 11, Plaintiff moved for a preliminary injunction to enjoin Defendants from violating Plaintiff's constitutional rights and to order a hearing with the opportunity to be represented by counsel, present evidence, and call and cross-examine witnesses.  On August 30, the Magistrate Judge issued an R & R recommending that the Court deny Plaintiff's motion for a preliminary injunction.  Plaintiff filed objections on September 13, and Defendants replied on September 25.  Plaintiff filed a sur-reply on October 3, and Defendants filed a response on November 1.  Accordingly, this matter is now ripe for review.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court.  The R & R has no presumptive weight, and the responsibility for making a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties may make written objections to the R & R within fourteen days after being served with a copy of it. 28 U.S.C. § 636(b)(1). This Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and it may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id.* Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985). Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **DISCUSSION**

A party seeking injunctive relief must show (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) that the injunctive relief he seeks is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Magistrate Judge based her recommendation to deny the injunction on her finding that Plaintiff had not established that he is likely to succeed on the merits of his procedural due process claims.

### I. Objections One, Two, and Four

Plaintiff's first objection is that that Magistrate Judge misapplied *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), in determining that an adequate post-termination remedy exists for Plaintiff in the form of a claim for breach of contract in state court. Plaintiff's second objection is that the Magistrate Judge failed to apply the correct legal standard for

determining when an adequate post-termination remedy exists for a public employee in a breach-of-contract action in state court. Plaintiff's fourth objection is that the Magistrate Judge erred in relying on *Burch v. North Carolina Department of Public Safety*, 158 F. Supp. 3d 449 (E.D.N.C. 2016). All three objections require the Court to examine whether Plaintiff has an adequate post-termination remedy through a state court action, such as a claim for breach of contract.

Applying *Loudermill*, the Magistrate Judge found that the College had provided Plaintiff with "oral or written notice of the charges against him, and an opportunity to present his side of the story," *id.* at 546, before termination because Plaintiff submitted an objection to the notice on June 16, a response with objections on June 19, and objections to Roberts' recommendation on June 28, all before President McConnell rendered his termination decision on June 30. Relying on *Loudermill's* direction that pre-termination procedures "need not be elaborate" when an employee is afforded adequate post-termination procedures, *id.* at 545, the Magistrate Judge found that the pre-termination process was sufficient in light of the fact that Plaintiff has post-termination opportunities to be heard, such as by bringing a claim for breach of contract.

Plaintiff argues that, by finding that a state breach-of-contract claim constitutes post-termination procedures for due process purposes under *Loudermill*, the Magistrate Judge failed to follow *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001). In *Lujan*, the Supreme Court distinguished a claim for payment under a government construction contract from claims involving a "present entitlement" to "pursue a gainful occupation." *Id.* at 196. The Court explained that a contractor's claim was unlike "present entitlement" claims the Court had addressed in that a contractor's interest in payment "can be fully protected by an ordinary breach-of-contract suit." *Id*. Plaintiff contends that his claim to employment is like those the Court implied cannot be fully protected by an ordinary breach-of-contract suit, and thus his ability to bring a breach-of-contract

4

claim does not constitute adequate post-termination procedure. However, Plaintiff's claim is not like the "present entitlement" cases referenced in *Lujan*. The Court cited two "present entitlement" cases dealing with an interest in pursuing an occupation, *Barry v. Barchi*, 443 U.S. 55 (1979), and *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230 (1988). In *Barchi*, the Court held that a horse trainer was entitled to a hearing promptly following the suspension of his license due to suspicion that he drugged a horse. 443 U.S. at 66. The Court explained that a prompt post-suspension hearing was appropriate in light of the severe consequences a trainer could face from even a temporary suspension and the fact that the state had little or no interest in delaying a full hearing. *Id. Barchi* thus differs from Plaintiff's case in that the state, as the operator of the College, does have an interest in promptly removing an unsatisfactory employee and reducing the administrative burden that could result from having a full hearing in addition to a breach-of-contract action. *See Loudermill* at 542–43. Further, unlike Plaintiff, the plaintiff in *Barchi* had no contract under which he might bring a claim. A breach-of-contract suit would not have provided adequate post-termination process to the *Barchi* plaintiff because there was no contract at issue, but instead a horse-training license. The Court is not persuaded that *Lujan*'s reference to *Barchi* compels a post-termination hearing here, in addition to the opportunity to bring a breach-of-contract claim.

Like *Barchi*, *Mallen* addressed a suspension of employment by the government unrelated to a government employment contract. In *Mallen*, the Court upheld a statute which allowed the Federal Deposit Insurance Corporation to suspend an indicted bank official without a pre-suspension hearing and, upon request by the official, required the FDIC to conduct a post-suspension hearing and issue a final suspension decision within 90 days of the request. 486 U.S. at 241–42. As with *Barchi*, a breach-of-contract suit was not available to the employee in *Mallen*

since he did not have an employment contract with the FDIC. Consequently, this case provides no support to Plaintiff's argument that a breach-of-contract suit is inadequate post-termination process.

The other authorities cited by Plaintiff are also unpersuasive. For example, Plaintiff relies on *Ewald v. Department of Waste Management*, 972 F.2d 339 (4th Cir. 1992) (unpublished table decision), but in that case the Fourth Circuit held that the state had exceeded the pre-termination requirements of *Loudermill*, even though the employee did not receive a formal pre-termination hearing, because she had an opportunity to respond to the violations that led to her dismissal. The court did not condition its ruling on the availability of any particular type of post-termination process. Plaintiff also cites *Walsh v. Lugoff-Elgin Water District of Kershaw County*, No. 3:08-3122-CMC, 2009 WL 1044631 (D.S.C. Apr. 20, 2009), for the proposition that "[i]f no post-termination hearing is provided, a more formal pre-termination hearing is required." The Court acknowledges that principle, but *Walsh* addresses what pre-termination process is required when there is no post-termination hearing; it does not address whether Plaintiff's post-termination procedures in state court are sufficient.

Though the parties have cited cases outside this circuit, the Court sees no need to look to them when cases within the circuit have clearly considered the opportunity to bring a claim in state court as part of "the entire panoply of predeprivation and postdeprivation process provided by the state." *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (citing *Zinermon v. Burch*, 494 U.S. 113, 124 (1990)). For example, in *Fields*, the Fourth Circuit reasoned that the plaintiff had "numerous postdeprivation remedies" because he could bring a state law claim for wrongful discharge and was already bringing a claim for breach of contract in state court. *Id.* at 98–99; *see also Burch*, 158 F. Supp. 3d 449, 459 (E.D.N.C. 2016) ("Post-deprivation remedies include claims

6

for breach of contract"); *Hanton v. Gilbert*, 842 F. Supp. 845, 854 (M.D.N.C. 1994), *aff'd*, 36 F.3d 4 (4th Cir. 1994) (counting "tort remedies" as part of the "abundance of process" available to plaintiff post-termination). Plaintiff specifically objects to the Magistrate Judge's reliance on *Burch* and outlines the factual and procedural differences between that case and his own. While the Court acknowledges that the plaintiff in *Burch* claimed a lesser deprivation (being deprived of her vacation and sick time, as well as medical benefits that would have covered her pregnancy), the Magistrate Judge relied on *Burch* for the idea that state court remedies can be considered among a plaintiff's opportunities for post-deprivation process, a principle that was also applied in *Fields* and *Hanton*. Moreover, in *Fields*, the Fourth Circuit stressed that "[s]tate court is the proper forum to explore the full nature of the employer-employee relationship, including the extent to which the state has failed in any way to adhere to employment contract provisions." 909 F.2d at 99. Accordingly, the Court finds that the Magistrate Judge was right to consider the opportunity to bring a state court claim as a post-termination process available to Plaintiff. The Court agrees that Plaintiff is not likely to show that the process afforded to him, including his opportunity to be heard in state court, is constitutionally inadequate.[1] Thus, the Court finds that Plaintiff is not likely to succeed on the merits of his due process claim.

## II. Objection Three

Plaintiff's third objection is that the Magistrate Judge failed to account for the delay he would face by bringing a claim in state court. The Supreme Court has stated that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). "At

---

1. The Court need not address the parties' arguments about the distinction between tenured and contract employees because the Magistrate Judge assumed without deciding that Plaintiff had a protected property interest in continued employment. Likewise, the Court's decision does not depend on any distinction between the property interests of a tenured or contract employee, or the process that must accompany those interests.

some point, a delay in [a] post-termination hearing would become a constitutional violation." *Loudermill*, 470 U.S. at 547. However, the Court has declined to state a specific amount of time that constitutes a violation of due process. *See id*. ("A 9-month adjudication is not, of course, unconstitutionally lengthy *per se*."). In *Loudermill*, the Court rejected the plaintiff's argument that he experienced an unconstitutional delay since he had not offered any indication that his hearing was "unreasonably prolonged" other than noting that nine months elapsed from when he appealed his termination until when his appeal was dismissed. *Id*. Similarly, in *Hall v. City of Newport*, the Fourth Circuit affirmed the dismissal of the plaintiff-employee's procedural due process claim based on the delay in reinstating him. 469 F. App'x 259, 261–62 (4th Cir. 2012) (per curiam). In *Hall*, the Fourth Circuit held that the plaintiff, who was fired in November 2006 and reinstated in December 2008, had not been subjected to an unconstitutional delay because he had not alleged that the procedures that led to his reinstatement—a grievance panel followed by a state court action to enforce the panel's decision—were unreasonably prolonged. *Id*. The Fourth Circuit agreed with the district court that the standard procedural delays and the delay caused by the plaintiff's failure to promptly file his enforcement action in state court did not amount to constitutional violations under *Loudermill*. *Id*.

While Plaintiff has noted that it could be quite some time before a state court might hear his potential claims, he has not offered an indication that such a delay would be unreasonably prolonged. Rather, the delay would in part be caused by Plaintiff, who has yet to file a state court claim, and in part by the standard procedural delays of a court proceeding, neither of which amounted to a constitutional violation in *Hall*. Beyond those delays, the Court cannot guess what other delays might ensue. The Court finds that the Magistrate Judge did not err in failing to predict

unconstitutional delays when there is not yet any indication of them. Plaintiff will be able to bring a due process challenge based on such delays if those delays occur.

### III.    Objection Five

Plaintiff objects, without any discussion or analysis, that the Magistrate Judge only addressed his likelihood of success on the merits and did not address the other requirements for a preliminary injunction under *Winter*. If the party seeking an injunction fails to establish even one of the *Winter* requirements, the court must deny the request. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) ("[A]ll four requirements must be satisfied."), *vacated on other grounds*, 559 U.S. 1089 (2010). Thus, the Court need not address each of the preliminary injunction requirements.

### **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Plaintiff's objections are **OVERRULED**, the R & R is **ADOPTED**, and Plaintiff's motion for a preliminary injunction is **DENIED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**November 14, 2017**
**Charleston, South Carolina**

9