# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Matthew Heath, ) | Civil Action No. 2:17-cv-01792-RMG |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **PLAINTIFF'S MOTION FOR** |
| College of Charleston, Glenn F. McConnell, ) | **SANCTIONS AND MEMORANDUM** |
| President of the College of Charleston, ) | **IN SUPPORT** |
| and Matt Roberts, Director of Athletics, ) | |
| both in their official and individual ) | |
| capacities, ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Matthew Heath, by and through his undersigned counsel, hereby submits this Motion for Sanctions and Memorandum in Support against the Defendants College of Charleston and Matt Roberts for spoliation of evidence. Defendants have disregarded their legal obligations to preserve evidence relevant to Plaintiff's claims and therefore Plaintiff seeks an order from this Court restoring this action for the limited purpose of imposing sanctions against the Defendants College of Charleston and Matt Roberts. In accordance with Local Civ. Rule 7.02 (D.S.C.), counsel for Plaintiff conferred with counsel for Defendants and attempted in good faith to resolve the matters contained within and Defendants oppose this Motion.

## BACKGROUND/FACTS[1]

On July 7, 2017, Plaintiff filed suit against the Defendants College of Charleston, Glenn F. McConnell, President of the College of Charleston, and Matt Roberts, Director of Athletics. (ECF No. 1). In his Complaint, Plaintiff brought claims under 42 U.S.C. § 1983 for violation for

---

[1] This section merely summarizes the underlying facts applicable to this Motion. Plaintiff has set forth the facts in more detail in his Memorandum in Support of its Motion for Preliminary Injunction filed with this Court on July 11, 2017. (ECF No. 5-1).

1

his procedural due process rights as guaranteed to him by the Fourteenth Amendment of the Constitution of the United States. *Id.* Plaintiff thereafter filed an Amended Complaint against the Defendants that added two new claims for breach of contract and breach of contract accompanied by fraudulent act. *See* Amend. Complaint (ECF No. 57).

In his Amended Complaint, Plaintiff contended that the Defendant College of Charleston breached its employment contract with Plaintiff by breaching the implied covenant of good faith and fair dealing it owed to Plaintiff. *Id.* ¶ 47. Plaintiff alleges that this duty was breached by Roberts fabricating a reason for his termination as Head Coach of the Men's Baseball Team so as to allow the College of Charleston to hire Chad Holbrook, the individual who just days earlier had resigned from his position as Head Coach from the University of South Carolina. *Id.* ¶ 56. Defendant Matt Roberts is an employee of the College of Charleston and is the Director of Athletics and was Plaintiff's supervisor. Roberts successfully undertook a bad faith campaign to have Plaintiff's contract terminated where sufficient "just cause" did not exist in order to replace Plaintiff with Chad Holbrook, his former collegiate baseball coach at the University of North Carolina. Holbrook is an individual who Roberts himself has described as his career "mentor" and who Roberts has kept in contact with after their years together at the University of North Carolina. *See id.* ¶ 49. Unsurprisingly, Holbrook was hired as the College of Charleston's Head Coach after Plaintiff's termination. *Id.* ¶ 57.

Anticipating the importance and relevance of any communications between the Defendant Roberts and Chad Holbrook to his possible future suit, in a letter Plaintiff's counsel sent to the College's General Counsel, Angela Mullholland, on June 16, 2017, Plaintiff's counsel requested specifically that steps be taken to meet the College's duty to preserve this relevant evidence. *See* Letter from Pl.'s Counsel, attached hereto as Exhibit A. This letter, sent even

2

before Plaintiff's contract had been formally terminated, protested the lack of due process in Plaintiff's termination proceedings. *See id.* This letter also requested, in anticipation of possible litigation arising out of the termination of Plaintiff's contract, that the College of Charleston:

> [T]ake steps to meet the College's duty to preserve any and all documentation which may be relevant to this matter regardless of the form in which the documentation exists. This would include all communications regarding Coach Heath from any and all persons.  In addition, *you should preserve any and all communications which may exist regarding the College and Chad Holbrook or Mr. Holbrook's representatives.*

*See id.* at 3 (emphasis added). Suspecting even before his termination on June 30, 2017 that he was being ousted in a bad faith campaign to bring Chad Holbrook to the College of Charleston and that Roberts had been surreptitiously communicating with Holbrook for the purpose of recruiting Holbrook to the College, Plaintiff through his counsel specifically notified the College of the potential relevancy of communications by agents of the College with Chad Holbrook. *See id.*

The parties have recently entered into a Settlement Agreement, attached hereto as Exhibit B.[2] As part of this Agreement, the parties agreed that Plaintiff be allowed to have Steven M. Abrams of Abrams Cyber Forensics, LLC conduct a forensic examination of Defendant Roberts' cell phone. *Id.* at 1. The stated purpose of this examination was to determine whether there was any forensic evidence which "materially conflicts with the representations contained in paragraphs 4 and 5 of the Matt Roberts' affidavit, which has been provided to Abrams Cyber Forensics, LLC." *Id.* at 1. After conducting the forensic examination of Roberts' cell phone, Mr. Abrams was to issue a report of his findings to the parties' counsel which "provides any evidence that would create an issue of fact regarding the representations in Paragraph 4 and 5 of the Matt

---

[2] Fully executed copies of this Agreement and the Affidavit of Matt Roberts, Exhibit C, *infra*, are not presently available to Plaintiff's counsel but will be filed with the Court in a supplemental entry.

3

Roberts affidavit, and which specifically includes: (1) the content of any recovered texts between Holbrook and Roberts, and (2) any evidence of any deleted texts between Holbrook and Roberts and the contents of those deleted texts." *Id.* Counsel for Plaintiff has been informed and believes that the cell phone that was the subject of the forensic examination was provided to Roberts for use in his employment as the Director of Athletics by the "Cougar Club," a 501(c)(3) non-profit organization whose stated purpose is to "serve as the fundraising arm of the College of Charleston Athletic Department." *See* "What is the Cougar Club", Cougar Club, *available at* https://www.cofccougarclub.com/about/cougar-club.html (last visited November 8, 2018).

The Settlement Agreement also provided that Plaintiff had ten days after receiving Mr. Abrams' report to file to a motion to restore the case and set aside the Agreement on the ground that the forensic examination provided evidence which materially conflicts with the representations in Paragraph 4 and 5 of the Matt Roberts Affidavit, with the Court determining the merits of the motion. *Id.* at 2. If Plaintiff did not file such a motion within the ten-day period, the Agreement became final and the case would be dismissed with prejudice on the date as set forth in the Court's "Rubin Order." (ECF No. 95). The inclusion of a provision allowing Plaintiff to have a forensic examination of Roberts' phone performed and to then file a motion setting aside the Agreement if Roberts' affidavit was materially conflicted was intended by the parties to provide the Plaintiff with the right to pursue his claims for breach of contract and breach of contract accompanied by fraudulent act if the forensic examination of the iPhone produced messages which materially contradicted the statements in Roberts' affidavit.

The Affidavit of Matt Roberts, attached hereto as Exhibit C, that is referenced and incorporated into the Settlement Agreement, is an affidavit in which Roberts made several representations about his communications with Chad Holbrook during the relevant time period,

4

both before and after Plaintiff's termination on June 30, 2017. Roberts in this affidavit represented that from January 1, 2017 to July 1, 2017, he communicated with Chad Holbrook regarding personal matters but that during that period, he never communicated with Holbrook in any regard concerning:

    a. Matthew Heath's performance as the Head Baseball Coach for the College of Charleston,

    b. Matthew Heath's future as a coach for the College of Charleston,

    c. Any investigation or discipline concerning Matthew Heath,

    d. Whether the College of Charleston would hire another person to replace Matthew Heath,

    e. Whether Chad Holbrook was interested in the position of Head Baseball Coach at the College of Charleston, or

    f. Whether Chad Holbrook was interested in leaving the University of South Carolina to coach in any capacity at the College of Charleston.

Roberts Aff. ¶ 4. Roberts further stated in this affidavit that "from January 1, 2017 to July 1, 2017, I never discussed Matthew Heath's position, performance, or future at the College of Charleston in any regard with Chad Holbrook, or anyone acting on Chad Holbrook's behalf." *Id.* ¶ 5.

Following Steven Abrams' forensic examination of Roberts' cell phone to determine if there was any evidence which materially conflicts with these representations, Abrams issued to counsel for the parties his report in the form of an affidavit, attached hereto as Exhibit D. The report concluded that the settings of the iPhone had been configured to retain messages only for thirty days. Abrams Aff. ¶ 6. This setting, in which messages are only retained for thirty days, is

not the normal "default" setting on the iPhone. *Id.* As a result of this "non-default" setting that essentially deleted any of the messages in question, there were no intact iMessages or MMS/SMS "text" messages on the phone from the period in question. Abrams Aff. ¶ 7. Due to the deletion of any messages, Mr. Abrams could not determine whether Roberts had any communication with Holbrook regarding the topics at issue, as there were no messages found sufficiently intact to be recovered on the iPhone. *See id.* ¶ 7-9.

Therefore, despite the Plaintiff's notification to the College to preserve all relevant documentation and communications to Holbrook in the June 16, 2017 letter, the College failed to prevent its employee, Matt Roberts, from deleting evidence of all communications to or from Chad Holbrook during the crucial time period of January 1, 2017 to July 1, 2017, although both the College and Roberts had a clear duty to preserve these communications after this letter was sent. As a result, Plaintiff has been prejudiced in that the condition for finalization of the Settlement Agreement cannot be fulfilled. Roberts has destroyed any trace of the communications between himself and Holbrook that were contained on the iPhone furnished for his employment. Plaintiff is now unable to have the forensic examiner study the content of those messages to determine if the subject of Holbrook's recruitment to the College of Charleston or Plaintiff himself was discussed in these messages. Further, if the case is reopened and the Settlement Agreement not finalized, Plaintiff has been rendered virtually unable to prove his claims of breach of contract and breach of contract accompanied by fraudulent act.

All evidence of messaging communications between Plaintiff's supervisor, (the man responsible for recommending that Plaintiff be terminated), and that supervisor's "mentor" who ultimately ended up replacing Plaintiff as Head Coach almost immediately after his resignation from USC has been destroyed by a setting on Roberts' iPhone that had to be affirmatively and

intentionally altered from its "default" setting. *See id.* Any chance that Plaintiff might have had to demonstrate that Defendant Roberts communicated in these messages with Holbrook for the purpose of recruiting Holbrook and recommended in bad faith that Plaintiff be terminated where Roberts had knowledge that "just cause" for Plaintiff's termination did not exist has been irrevocably and completely extinguished. The Plaintiff now respectfully requests that the Court remedy this intentional destruction of relevant evidence that has prejudiced Plaintiff and impose appropriate sanctions on the Defendants.

## ARGUMENT

### I.     Legal Standard

Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *See Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001). The duty to preserve material evidence arises not only during litigation itself but also extends to the period before the litigation begins when a party reasonably should know that the evidence may be relevant to anticipated litigation. *Id.* Upon finding that spoliation has occurred, the court has broad discretion to choose the appropriate sanction for spoliation, and "the sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id.* at 590 (internal citation marks omitted). A court's power to impose such sanctions arises from its inherent authority to preserve the integrity of the judicial process. *See id.* "The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Id.*

As a result, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper

conduct." *Id*. (internal citation omitted). Such responses may include entry of judgment against the spoliating party, for lesser acts of spoliation, an adverse inference that the spoliated evidence was unfavorable to the spoliating party. *See id.* A court in its discretion may also elect to impose monetary sanctions or a wide variety of other sanctions fashioned to redress the disruption of the judicial process in each particular case. *cf.* Fed. R. Civ. P. 37(b)(2) (authorizing sanctions for violations of discovery orders).

Sanctionable spoliation of evidence occurs when three prerequisites are met. First, the altered or destroyed evidence must have been relevant to the litigation. *Nucor Corp. v. Bell*, 251 F.R.D. 191, 194 (D.S.C. 2008) (citing *Vodusek v. Bayliner Marine Corp*., 71 F.3d 148, 156 (4th Cir. 1995)). Second, the party must have been under a duty to preserve the evidence at the time it was altered or destroyed. *Bell*, 251 F.R.D. at 194. Third, the spoliating party must have acted with the requisite level of intent, which will vary depending on the sanction imposed. *Id.* In order to impose sanctions, the court must find evidence that any destruction or loss of documents took place with a "culpable state of mind," which can be satisfied by a finding that there was bad faith destruction, gross negligence, or ordinary negligence. *Thompson v. United States Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003). The Fourth Circuit does not require a showing of bad faith to impose sanctions and requires only a showing of fault, with the degree of fault impacting the severity of sanctions. *See Silvestri*, 271 F.3d at 590. Should a court find that these elements are met, then any sanctions imposed must suit "the purpose of leveling the evidentiary playing field and . . . the purpose of sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995).

As to the second requirement, the duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its

preservation. *Thompson*, 219 F.R.D. at 101 (citing *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). In order to fulfill this duty, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Id.* at 100 (citation omitted). Ordinary agency principles govern a party's responsibility for spoliation committed by its employees. *See Nucor Corp. v. Bell*, 251 F.R.D. 191, 196 (D.S.C. 2008). "An act is within the scope of a servant's employment were reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business." *Id.* Therefore where an organization that is a party to litigation, it can be held responsible for spoliation when an employee breaches that duty while acting within the scope of his or her employment. *See id. See also Legacy Data Access, LLC v. Mediquant, Inc.,* No. 3:15-cv-00584-FDW-DSC, *2017 U.S. Dist. LEXIS 198817, at*33 (W.D.N.C. 2017) (noting principal's control over ESI is not required for spoliation liability for an agency relationship); *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 515 (quoting *In re NTL, Inc. Sec. Litig*., 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (noting that documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action).

Where a failure to preserve documents arises out of the bad faith actions of a party, such as intentional or willful conduct, the relevance of those destroyed documents is presumed. *Thompson*, 219 F.R.D. at 101. Where documents are intentionally or willfully destroyed, relevance is presumed because of the logical inference that, when a party acts in bad faith, he demonstrates a fear that the documents will expose relevant and unfavorable facts. *Vodusek*, 71 F.3d at 156. Where there is a failure to preserve evidence through either gross or ordinary

9

negligence, however, the moving party must establish that the lost documents were relevant to his case. *Zubulake IV*, 220 F.R.D. at 220.

In some instances where only a lesser culpable state of mind can be proven, however, the Fourth Circuit has upheld the imposition of the most severe sanction of entering judgment for the moving party. In *Silvestri,* the plaintiff filed a products liability action against General Motors alleging that the airbag in his car did not properly deploy in a collision, thereby causing him injury. *Silvestri*, 271 F.3d at 586. The plaintiff, however, had allowed the car to be repaired before he gave GM notice of his claim. *Id.* at 587. As a result, GM had no opportunity to inspect the car in its unrepaired condition*. Id*. The district court entered a judgment of dismissal, finding "dismissal to be the appropriate sanction for the spoliation of evidence in this case." *Id.*

The Fourth Circuit upheld the lower court's decision, noting that the sanction of dismissal is severe and primarily reserved for those instances involving bad faith. *Id.* at 593. The Court recognized where "even when conduct is less culpable, [a judgment of] dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." *Id.* Accordingly, the sanction of a judgment of dismissal is justified when either (1) "the spoliator's conduct was so egregious as to amount to a forfeiture of his claim," or (2) "the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." *Id.*[3]

---

[3] Although *Silvestri* involved a sanction of a judgment of dismissal against a plaintiff spoliator, the same logic would apply to the sanction of plaintiff seeking a default judgment against a defendant spoliator. *See, e.g., Computer Assocs. Int'l v. Am. Fundware, Inc*., 133 F.R.D. 166 (D. Colo. 1990) (striking defenses and granting default when defendants destroyed critical evidence); *QZO, Inc. v. Moyer*, 594 S.E.2d 541, 547 (S.C. Ct. App. 2004) (striking defenses and granting default judgment when defendant was ordered by the court, upon filing of the complaint, to preserve and produce its computer but delayed seven days and reformatted the hard drive before production).

The three requirements necessary for a finding of sanctionable spoliation can unquestionably be met here. First, the messaging communications at issue between Defendant Roberts and Chad Holbrook are inarguably relevant to Plaintiff's claims. Plaintiff has alleged in his Amended Complaint that Roberts successfully engineered a surreptitious campaign to have Plaintiff's employment contract be terminated for "just cause" where Roberts had knowledge sufficient cause did not exist, all with the fraudulent intent of replacing Plaintiff with his "mentor" Holbrook. Amend. Compl. ¶ 57. Any cellular messaging communications between the two during the relevant time period January 1, 2017 to July 1, 2017 that contain any reference to Plaintiff, the performance of the College of Charleston's Men's Baseball Team, Chad Holbrook's career prospects, the investigation the College conducted into Plaintiff's conduct as Head Coach, any student athlete on the Team or any of those athletes' parents, would be potentially relevant evidence demonstrating that the two individuals conspired to have the Plaintiff ousted from the College. This question drives at the very heart of Plaintiff's claims for breach of contract and breach of contract accompanied by fraudulent act. The principle motivation to terminate Plaintiff without sufficient "just cause" was to instill Holbrook as the new head coach. Plaintiff contends that the College of Charleston ratified and authorized its agent and employee Roberts' conduct, thereby breaching its duty of good faith and fair dealing that it owed to Plaintiff and acted with fraudulent intent in breaching the contract to replace Plaintiff with Chad Holbrook. *See generally* Amend. Compl.

Further, the content of the cellular messages between Holbrook and Roberts is unquestionably relevant to determining whether Defendant Roberts made a material misrepresentation in his affidavit regarding the nature of his communications with Holbrook during the relevant time period. Roberts in his affidavit averred that "from January 1, 2017 to

July 1, 2017, I never discussed Matthew Heath's position, performance, or future at the College of Charleston in any regard with Chad Holbrook, or anyone acting on Chad Holbrook's behalf." Roberts Aff. ¶ 5. A forensic examination was conducted on Roberts' iPhone for the specific purpose of examining the content of any messages on his phone that would create an issue of fact regarding the statements in Paragraphs 4 and 5 of Roberts' affidavit. The ability to examine the content of the text messages and iMessages on Roberts' iPhone was the primary condition upon which the finalization of the Settlement Agreement depended on for Plaintiff. Because of Roberts' complete and total destruction of any trace of these messages, Plaintiff has been robbed of the ability to examine the content of these messages to determine whether Roberts had made misrepresentations about his communications with Holbrook in his affidavit.

The College of Charleston, and by extension its employee Matt Roberts, clearly had a duty to preserve this evidence at the time that the evidence was deleted. Mr. Abrams was provided with Matt Roberts' iPhone on October 26, 2018. Abrams Aff. ¶ 4. Mr. Abrams' analysis revealed that the phone's configurations only allowed for messages to be retained for thirty days, which was a change from the phone's default configuration of retaining them forever. *Id.* ¶ 6. Although it is unclear when exactly this configuration was changed from the default to delete the messages, the College of Charleston clearly had a duty to see that these messages were preserved and that any data recycling measures utilized by its employee Matt Roberts were halted at the latest by June 16, 2017, the date that Plaintiff's counsel delivered its letter to the College's General Counsel.

In this letter, Plaintiff's counsel gave the College of Charleston specific notice that "any and all communications which may exist regarding the College and Chad Holbrook or Mr. Holbrook's representatives" should be preserved in reasonable anticipation of litigation. *See* June

16, 2017 Letter from Pl.'s Counsel. Even assuming that the configuration on the iPhone had already been switched by Roberts to delete messages every thirty days before June 16, 2017, the College and Roberts questionably breached its duty to preserve any relevant messages present from June 16, 2017 to July 1, 2017. Mr. Abrams found no such messages from that time period on Roberts' phone because of the phone's "non default" setting to retain messages for only thirty days. *See* Abrams Aff. ¶¶ 7-8.

The College of Charleston additionally can be held responsible for the spoliation of this relevant evidence on its employee, Matt Roberts' phone, although the phone itself is purportedly the property of an affiliated entity named the "Cougar Club." This phone was provided to Matt Roberts for use in his employment as Director of Athletics at the College of Charleston and was used the course and scope of the College's business; it was not Roberts' phone for personal use. As the College had the right, authority, and practical ability to obtain the messages from its agent's phone at all times during Roberts' employment, it can consequently be sanctioned for failing to preserve these messages. *See Bell*, 251 F.R.D. at 196; *Silvestri*, 271 F.3d at 591 (noting ownership of evidence is not a requirement for the spoliation analysis).

Finally, the relevant messages were destroyed with a "culpable state of mind" and the prejudice caused to the Plaintiff by the destruction of this evidence is sufficient for the imposition of sanctions. As Mr. Abrams' examination of Roberts' iPhone revealed, the phone's default configuration is to retain iMessages and MMS/SMS messages forever. Abrams Aff. ¶ 6. Therefore, an affirmative step was required to alter the default configuration from retention forever to deletion every thirty days. Even assuming that the complete and total destruction of all messaging on his phone was a negligent oversight and that he had been utilizing this configuration before the duty to preserve arose, the Fourth Circuit does not require a showing of

"bad faith" to find that the conduct was sufficiently culpable for sanctions, especially where the prejudice to the party moving for sanctions is great. *See Silvestri*, 271 F.3d at 590.

The Plaintiff has been enormously prejudiced as he has been left without a mechanism to fulfill a condition of the Settlement Agreement entered into with Defendants if the Court does not intervene. Plaintiff simply seeks here the ability to fulfill this condition and have the ability to examine the content of these messages to determine the veracity of the statements in paragraphs 4 and 5 of Roberts' affidavit. These statements go to the very heart of Plaintiff's breach of contract and breach of contract accompanied by fraudulent act claims. Further, should the Settlement Agreement not be finalized and Plaintiff proceeds to a trial in this matter, he has been left without the ability to scrutinize the content of these key communications and demonstrate Roberts' fraudulent intent through them.

The Plaintiff therefore asks that the Court intervene to level the evidentiary playing field and right the wrong that was caused by the spoliation of this relevant evidence. The Plaintiff asks that the Court order Defendants to provide the relevant messages by the following methods:

1. Requiring Matt Roberts and the College of Charleston to turn over any computer, tablet, or any other electronic device that has been used to create a "backup" of the iPhone's data or that has had any of the iMessages or MMS/SMS message data from the iPhone transferred onto the device to Steven Abrams for a forensic examination to extract the iPhone's messaging data (*see* Second Affidavit of Steven M. Abrams ¶ 6, attached hereto as Exhibit E); and

2. Requiring Matt Roberts to turn over any Apple computer or iPad devices owned by Mr. Roberts to Steven Abrams for a forensic examination to determine whether the iPhone's iMessages for the period in question were ever "synched" up to the Apple

14

      device's "long term memory," thereby allowing for the extraction of the relevant messages from the device. (*See id.* ¶ 7).

3. Requiring the College of Charleston to produce its employee Chad Holbrook's cell phone for forensic examination by Steven Abrams to examine any communications with Matt Roberts for the period from January 1, 2017 to July 1, 2017. (*See id.* ¶ 8).

If the methods mentioned above fail to produce the relevant messages, the Plaintiff requests that the Court thereafter consider the imposition of more severe sanctions against the Defendants, including an entry of judgment against the Defendants or an adverse jury instruction regarding these messages. *See Silvestri*, 271 F.3d at 590; *Vodusek*, 71 F.3d at 156.

      Imposing these sanctions upon the Defendants would undo the prejudice caused by the spoliation and would allow Plaintiff to recover the messages at issue that were deleted. The Plaintiff requests that the costs of any further forensic examination be borne by the Defendants College of Charleston and Matt Roberts. Plaintiff further requests that the Court in its discretion impose the sanction of awarding him costs and legal fees allocable to Defendants' spoliation, including attorneys' fees incurred in the bringing of this Motion. *See Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 524 (D. Md. 2009).

## CONCLUSION

      The Plaintiff respectfully requests that the Court intervene to remedy the prejudice caused to the Plaintiff and grant his Motion for Sanctions.

      Respectfully submitted,

/s/ Allan R. Holmes
Allan R. Holmes, Federal I.D. #1925
Cheryl H. Ledbetter, Federal I.D. #11446
Rebecca J. Wolfe, Federal I.D. #12634
Suite 110, 171 Church Street
Charleston, South Carolina 29401
Phone: (843) 722-0033
Facsimile: (843) 722-0114

**ATTORNEYS FOR PLAINTIFF**

November 11, 2018
Charleston, South Carolina

16