**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Matthew Heath, | ) | Civil Action No. 2:17-1792-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| College of Charleston, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Plaintiff's motion for sanctions against Defendants College of Charleston and Matt Roberts. (Dkt. No. 96.) For the reasons set forth below, Plaintiff's motion is denied without prejudice.

**I.   Background**

Plaintiff was employed as the head coach of the men's baseball team at the College of Charleston and brought suit alleging claims under 42 U.S.C. § 1983, breach of his employment contract and breach of the contract accompanied by fraud. Plaintiff filed his Original Complaint on June 7, 2017. On June 16, 2017, Plaintiff's counsel requested that the College of Charleston comply with its duty to preserve evidence that may be relevant to the litigation, specifically any communications regarding Plaintiff or regarding the College of Charleston and Chad Holbrook, the head coach at the University of South Carolina whom Plaintiff alleges resigned from that role immediately before Defendants removed Plaintiff from the role at the College of Charleston. (Dkt. No. 96-1 at 4.) On October 25, 2018, the parties entered into a settlement agreement providing that Steven Abrams, a forensic examiner, would analyze the iPhone of Defendant Matt Roberts, who was Plaintiff's supervisor, to determine if there were any messages contradicting Roberts's prior sworn statement that from January 1, 2017 to July 1, 2017 he did not discuss

Plaintiff or Plaintiff's employment with Chad Holbrook, the head coach at the University of South Carolina whom Plaintiff alleges left that position to replace Plaintiff at the College of Charleston. (Dkt. No. 96-2.) The settlement agreement further provided that Plaintiff would have ten days after receiving the forensic report to file a motion to restore the case and set aside the settlement on the grounds that the examination provided evidence that materially conflicts with Roberts's affidavit. In a report dated October 31, 2018, Abrams concluded that Roberts's iPhone contained no such messages because the iPhone was configured to retain messages for only thirty days in lieu of the default setting to retain messages indefinitely. (Dkt. No. 96-4 ¶ 6.)

On November 11, 2018, Plaintiff filed the instant motion to sanction Defendants for the spoliation of text messages on Roberts's iPhone from January 1, 2017 to July 1, 2017 regarding Plaintiff and his employment. The sanction Plaintiff seeks is an Order from the Court that Defendants provide the relevant text messages by allowing Mr. Abrams to conduct a forensic examination for the messages on other electronic devices belonging to Roberts and Chad Holbrook, who is now an employee of the College of Charleston. (Dkt. No. 96 at 14-15.)

## II.  Legal Standard

Federal district courts are vested with a wide range of inherent powers that allows them to govern the courtroom and all litigation processes before them. *Chambers v. Nasco,* 501 U.S. 32, 43 (1991). An example of these inherent powers is the discretionary power of the Court to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation. *See Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993). In order to sanction a party for spoliation of evidence, the Court must determine first whether or not there was a duty to preserve the evidence at issue. *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991). If a duty existed,

the Court must also consider the prejudice suffered by the non-spoliating party and the level of culpability of the spoliator.

The party moving for sanctions on the basis of spoliation bears the burden of establishing three independent elements before the Court may determine which sanction, if any, is appropriate: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the evidence was destroyed "with a culpable state of mind," and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107–08 (2d Cir. 2002).

### III. Discussion

The Court finds that Plaintiff's motion for sanctions is premature and, therefore, denies the motion without prejudice.

The sanction Plaintiff seeks is a forensic examination of Roberts's and Holbrook's electronic devices to determine if the text messages at issue can still be retrieved. If the messages can be retrieved, then they were not spoliated to begin with. *See, e.g.*, *Cytec Carbon Fibers LLC v. Hopkins*, No. 2:11-0217-RMG-BM, 2012 WL 6044778, at *1 (D.S.C. Oct. 22, 2012) ("Spoliation is a form of destruction; if evidence is intact, it has not been spoliated."). As a result, the Court does not at this time consider, for example, whether Roberts purchasing the iPhone with the thirty day setting already selected and not considering to adjust the setting for a litigation hold constitutes a sanctionable "showing of fault." (Dkt. No. 97-5.) *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) (noting that while some courts require a showing of bad faith in order to impose sanctions, "the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of the sanctions"). Nor does the Court now

consider whether Plaintiff has established that the text messages were relevant to his claims in that a reasonable factfinder could conclude that the text messages would have supported the claims.

Whether the text messages were spoliated to begin with may be determined by a forensic examination of other electronic devices that may have "back-ups" of the sent messages or the received version of the message. In addition to being necessary to the legal analysis for sancitonable conduct, the information Mr. Abrams could retrieve from these electronic devices may also be relevant to the parties' claims or defenses, and the parties may reinstate the action upon a showing of good cause on or before January 1, 2019. (Dkt. No. 95, November 2, 2018 *Rubin* Order.) *See* Fed. R. Civ. P. 26(b)(1) (mandating that civil litigants may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before" them.).

### IV.     Conclusion

For the foregoing reasons, Plaintiff's motion for sanctions (Dkt. No. 96) is **DENIED WITHOUT PREJUDICE**.

Defendants are hereby ordered to comply with the below directives within five days of the date of this Order:

1.     Matt Roberts and the College of Charleston are ordered to provide Steven Abrams with any computer, tablet or other electronic device that has been used to create a "backup" of Roberts's iPhone's (the "iPhone") data or that has any of the iMessages or MMS/SMS message

data from the iPhone transferred onto the device, for a forensic examination to extract the iPhone's messaging data.

2. Matt Roberts is ordered to provide Steven Abrams with any Apple computer or iPad devices owned by Mr. Roberts, for a forensic examination to determine whether the iPhone's iMessages for the period of January 1, 2017 to July 1, 2017 were ever "synched" to the Apple device's "long term memory," thereby allowing for the extraction of the relevant messages from the device.

3. The College of Charleston is ordered to produce to Steven Abrams the cell phone of its employee Chad Holbrook, for a forensic examination of any communications with Matt Roberts during the period of January 1, 2017 to July 1, 2017.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

December 10, 2018
Charleston, South Carolina